CASE 52—PETITION ORDINARY—MARCH 24.

# Bank of Martin v. Cassedy & Co.

### APPEAL FROM LYON CIRCUIT COURT.

1. COMMERCIAL LAW—BILLS OF EXCHANGE—SET-OFF.—Where one firm is indebted to another and draws a bill of exchange payable to itself for the purpose of enabling the creditor firm· to ·raise money thereon, and it is by the latter firm accepted and‹ sold before its maturity to a *bona fide* holder, the makers can not in an action by the holder thereof plead a set-off against the same which had arisen in favor of the drawers as against the acceptors, between the date of the bill and its maturity.

2. NOTICE OF ASSIGNMENT.—No notice of the assignment of the bill of exchange was necessary to fix the liability of the drawers to a *bona fide* purchaser thereof for value before maturity.

THOS. E. MOSS FOR APPELLANT.

1. Where a note is executed for the purpose of enabling the payee to raise money on it, the maker can not, in an action by the assignee, set up as a defense a debt due him by the payee. Barbaroux v. Barker, 4 Met., 47; Gano v. Finnell, 13 B. M., 390.

2. The note given in renewal of the acceptance was at once discounted by appellant at a Kentucky bank, and no defense can be made to it.

W. S. PRYOR FOR APPELLEE.

1. When the renewal note was executed the firm of Burnett & Co. was indebted to appellees, and appellees were merely the accommodation drawers, and had no interest in the paper; and if the note had been discounted, appellees were never notified of it, until months after the maturity thereof, when Burnett & Co. were in failing circumstances.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

W. L. Burnett & Co., composed of W. L. Burnett and E. H. Puryear, were tobacco commission merchants conduct-

ing a warehouse in Paducah, and S. H. Cassedy & Co. were dealers in tobacco, residing in Crittenden county and engaged in shipping tobacco to Burnett & Co. to be sold, these relations having existed between the two firms for several years. Cassedy & Co. were in the habit of drawing bills of exchange on Burnett & Co., or E. H. Puryear, with their endorsement, and delivering these drafts to them to be discounted. Ordinarily, the proceeds of these bills of exchange were credited to Cassedy & Co. on the books of Burnett & Co. and they drew against such credits in payment of their obligations for tobacco purchased and shipped to the firm.

On November 2, 1892, Cassedy & Co. drew and signed this paper:

"Paducah, Ky., November 2, 1892.

"$1,000

"Four months after date pay to the order of ourselves one thousand dollars, for value received, and charge same to the account of S. H. Cassedy & Co.

"W. L. Burnett & Co., Paducah, Ky.

"(Signed) S. H. Cassedy & Co.

"Due March 2-5, 1893."

This paper is endorsed across its face, "Accepted. W. L. Burnett & Co.," and on the back of it appears the endorsement, "S. H. Cassedy & Co." At the date of the execution of this paper Cassedy & Co. were indebted to Burnett & Co., and this paper, so endorsed, was sold by Burnett & Co. to the appellant bank at Martin, Tenn.

Before its maturity the paper was sent by the Bank of Martin to the American German National Bank at Padu-

cah for collection, who notified E. H. Puryear, the surviving partner of the firm of W. L. Burnett & Co., and S. H. Cassedy & Co., that it held same for collection.

On March 4, 1893, W. S. Dycus, a member of the firm of Cassedy & Co., whose special business it was to see after the financial affairs of the firm, went with E. H. Puryear to the American German Bank in Paducah, and after some conversation with Thompson, the cashier of the bank, he, as agent for appellant, at the joint request of Dycus and Puryear, renewed the debt for four months, and the following bill was executed:

"$1,000.                    Paducah, Ky., March 4, 1893.

"Four months after date, for value received, we jointly and severally promise to pay to the order of Ed H. Puryear $1,000.    Negotiable and payable to the American German National Bank of Paducah, Ky.

"(Signed) S. H. Cassedy & Co.

"N. B.   The parties hereto waive protest or notice of protest if this paper is not paid at maturity.

"No. 3199.   Due July 4, 1893."

And on the back of this paper appears this endorsement:   "This is for renewal for account of W. L. Burnett & Co., No. 45048, drawn by S. H. Cassedy & Co., due March 5, 1893, for $1,000," and on the back thereof is also this endorsement:   "Protest of within note and notice thereof are hereby waived by me as endorser and my liability acknowledged.   Ed H. Puryear, July 7, 1893," the name of Cassedy & Co. being signed to this note by Dycus.

Dycus testifies that he understood that this was to be a renewal of the draft, but that he did not know at that

time that appellant owned it and did not acquire this information until the 14th day of September, 1893; that he consented for the original draft to remain with Puryear to be used in a settlement, as the surviving partner, of the estate of W. L. Burnett & Co. The discount for the additional four months was paid by Puryear, and the renewal note and discount were transmitted by the American German Bank to the appellant herein.

At the date of the maturity of the note, payment having been refused, this suit was instituted by appellant against the firm of S. H. Cassedy & Co. and E. H. Puryear. There is no question but that appellant acquired title and possession of the original bill for value.

Payment was resisted by Cassedy & Co., upon the ground that they had no knowledge of appellant's ownership of the obligation sued on until September 14, 1893; that at the time the note sued on was executed the defendants were indebted to Puryear as surviving partner of W. L. Burnett & Co., including the note sued on, in the sum of $3,054.29; that after that date, and before the 6th day of July, 1893, Puryear, as surviving partner, sold tobacco belonging to defendants and received the proceeds of such sales amounting to $3,486; that the bulk of this money was received by Puryear before the note sued on matured, and that he had appropriated a part of same to the payment of a bill due a bank at Princeton and that there yet remained due to defendants a balance of some $1,411, and that at the time the tobacco was sold by Puryear and the proceeds held by him they had no notice of any assignment or transfer of the note sued on; and they set up the

indebtedness to Puryear arising from the sale of the tobacco as a setoff against the obligation sued on.

Section 474 of Kentucky Statutes provides:

"All bonds, bills and notes for money or property shall be assignable, so as to vest the right of action in the assignee; except in case of bills of exchange, not to impair the right to any defense, discount or setoff that the defendant has and might have used against the original obligee, or any intermediate assignor, before notice of the assignment."

Section 483 provides:

"Promissory notes payable to any person, or to a corporation, and payable and negotiable at any bank incorporated under any law of this Commonwealth, or organized in this Commonwealth under any law of the United States, which shall be endorsed to and discounted by the bank at which the same is payable, or by any of the banks of this Commonwealth as above specified, shall be, and are hereby, placed on the same footing as foreign bills of exchange."

Defendants insist that as the obligation sued on was not discounted by a bank of this Commonwealth, that they have the right to set off against same their debt against Puryear, upon the theory that they had never received notice of the assignment of either obligation to appellant.

It is evident that the original acceptance, dated November 2, 1892, was executed by the appellees to Burnett & Co., at a time when they were indebted to that firm in a greater sum than the amount thereof and for the express purpose of enabling Burnett & Co. to raise money upon it,

by sale or in any other manner they might find expedient, and being in the form of a bill of exchange there is no reason why a bank acquiring this paper for value in the usual course of business, before its maturity, should have been put upon inquiry as to the consideration for its execution or the status of accounts between the drawers, acceptors or endorsers thereof, as after its purchase by appellant it became commercial paper and was not the subject of setoff under section 474 of Kentucky Statutes, in favor of the drawers as against the acceptors of same, even if such equitable defense against it had existed at the date of its maturity; because by the assignment thereof to appellant the appellees became indebted to it as fully as though the consideration had been paid to them directly. No restrictions had been placed upon the use of this paper by appellees, and appellant was under no legal obligation to notify them of its purchase from Burnett & Co. prior to its maturity.

At the time the note sued on was executed, appellees were still indebted to Burnett & Co., and this obligation was given to discharge a liability of appellees, which they had incurred by the negotiation of the original bill. At that time they were indebted to appellant for the amount thereof and could have made no successful defense if suit had been instituted thereon by appellant, and it is evident that the last note was accepted by Thompson as agent for appellant, at the request of both Puryear, and Cassedy & Co., acting through the financial member of that firm, W. S. Dycus.

The fact that the obligation sued on was made payable

Bank of Martin v. Cassedy & Co.

to Puryear and his endorsement of same and paying the discount, instead of being taken directly to the bank, as it could have required, is not important, as it is apparent that at that time both Cassedy & Co. and Puryear owed the money to appellant and both wanted an extension of time in which to pay.

One who lends his credit to another, in the form of a note which is to be sold to raise funds, can not, after its negotiation and against the assignee of that note, be permitted to set up equitable set-offs or latent equities between the original parties to defeat recovery. (See Am. & Eng. Enc., volume 4, 299, and Gano v. Finnell, 13 B. M., 390.)

No notice of the assignment of the original bill of exchange was necessary to fix the liability of appellees to a *bona fide* purchaser thereof for value, before maturity; and having become indebted to appellant by its purchase of this paper, the note sued on was but the renewal of the evidence of this indebtedness to the payees.

For the reasons given the judgment is reversed and cause remanded for proceedings consistent with this opinion.